UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| KATHLEEN HEAROD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:24-cv-00077-AGF |
| | ) |
| LELAND DUDEK,[1] | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This action is before the Court for judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff Kathleen Hearod was not disabled prior to her 50th birthday,[2] and thus not entitled to disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, during that time.  For the reasons set forth below, the Commissioner's decision will be affirmed.

## BACKGROUND

Plaintiff, who filed this action pro se, has failed to comply with the Court's Case

---

[1]     Leland Dudek became the Acting Commissioner of Social Security in February of 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Leland Dudek should be substituted for Kilolo Kijakazi as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2]     The ALJ found that after Plaintiff turned 50 years old and, thus, her age category changed to an individual closely approaching advanced age under the Commissioner's regulations, the regulations—specifically, Rule 201.14 of the medical-vocational guidelines (20 C.F.R. Part 404, Subpt. P, App. 2)—directed a finding of disability.  Tr. 26.  Plaintiff does not challenge that finding here.

Management Order ("CMO") (ECF No. 7), which provides that she must "attach to [her] brief a statement of uncontroverted material facts, with each fact set forth in a separately numbered paragraph and supported by citations to the administrative transcript." ECF No. 7 at 2. Plaintiff's pro se brief (ECF No. 15) was largely devoid of citations to the administrative transcript. Nevertheless, Defendant responded to the facts set forth in Plaintiff's brief by admitting in part and denying in part the facts stated; has supported the admissions and denials with appropriate citations to the administrative transcript; and has included a statement of additional uncontroverted material facts with citations to the administrative transcript. ECF No. 16-1.

Plaintiff filed a reply brief (ECF No. 17), which she supplemented with leave of the Court (ECF Nos. 19 & 20). In granting such leave, the Court reminded Plaintiff that she was bound by the CMO's requirement that any response to Defendant's statement of additional facts must set forth whether Plaintiff admits or denies each numbered paragraph in the Commissioner's statement and must support any denials with citations to the record. ECF No. 19. Plaintiff has filed a response to Defendant's statement of additional facts which largely denies each of Defendant's facts stated. However, upon review of the response and the portions of the transcript cited therein, the Court notes that Plaintiff's "denials" do not indicate that the facts set forth in Defendant's statement of facts are untrue. Rather, the "denials" are simply supplemental facts that Plaintiff believes support her arguments. *See* ECF No. 21.

Upon careful consideration, the Court adopts the facts set forth in Plaintiff's

2

opening and reply briefs to the extent admitted by Defendant or otherwise supported by the record, as well as the facts set forth in Defendant's Statement of Additional Uncontroverted Facts, which have not been properly controverted by Plaintiff and which are supported by the record. Specific facts will be discussed as needed to address the parties' arguments.

Plaintiff, who was born on January 8, 1973, applied for benefits on April 26, 2021, when she was 48 years old. She alleged disability beginning on March 20, 2021, due to a concussion suffered following a fall on February 14, 2021. Plaintiff's application was denied at the administrative level, and she thereafter requested a hearing before an Administrative Law Judge ("ALJ").

A hearing was held on November 9, 2022. Plaintiff, who was represented by counsel at that time, and a vocational expert ("VE") testified at the hearing. By decision dated February 1, 2023, the ALJ found that Plaintiff had the severe impairments of degenerative disc disease of the cervical spine and traumatic brain injury.

The ALJ concluded that none of Plaintiff's impairments or combinations of impairments met or medically equaled one of the deemed-disabling impairments listed in the Commissioner's regulations. Next, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work, as defined in the Commissioner's regulations, with the following exceptions:

> [Plaintiff] can lift up to 10 pounds occasionally; she can stand/walk for about 2 hours and sit for up to 6 hours in an 8 hour work day, with normal breaks; she can occasionally climb ramps or stairs, but never climb ladders, ropes or

3

scaffolds; she can occasionally balance and crawl; she should avoid moderate exposure to excessive vibration and operational control of moving machinery; she should avoid unprotected heights and exposure to hazardous machinery; her work is limited to simple and routine tasks; and she cannot perform work that requires hourly quotas.

Tr. 22.

The ALJ next found that, prior to January 7, 2023 (when, as noted above, Plaintiff's age category changed to an individual closely approaching advanced age), Plaintiff could perform certain unskilled sedentary jobs listed in the Dictionary of Occupational Titles ("DOT") (hand packer, production worker, and inspector tester sorter), which the VE testified that a hypothetical person with Plaintiff's RFC and vocational factors (age, education, work experience) could perform and that were available in significant numbers in the national economy. Accordingly, the ALJ found that Plaintiff was not disabled under the Social Security Act during that time.

However, the ALJ found that as of January 7, 2023, the date Plaintiff's age category changed, the Medical-Vocational Guidelines directed a finding that Plaintiff was "disabled," based on her age, education, work experience, and RFC.

Plaintiff thereafter filed a timely request for review by the Appeals Council, which was denied on November 8, 2023. Plaintiff has thus exhausted all administrative remedies, and the ALJ's decision stands as the final agency action now under review.

As best the Court can discern, Plaintiff raises the following arguments in her pro se brief before this Court: (1) the ALJ erred by finding her not disabled prior to her 50th birthday based on her traumatic brain injury and the medical record; (2) the VE's

4

testimony did not support the ALJ's decision; and (3) the ALJ should have further developed the record to include witness statements from Plaintiff's family members and others.

Plaintiff has submitted with her brief filed in this Court witness statements from her adult son, who also serves as her caregiver; her two adult daughters, and a personal care assistant working with a community provider, all apparently prepared in November of 2024. ECF No. 15-1, 15-2, 15-3, and 15-4. These letters describe Plaintiff's difficulties in completing activities of daily living since her traumatic brain injury.

Plaintiff asks that the ALJ's decision be reversed in part, and that full benefits be awarded. Plaintiff further seeks $100,000 for mental anguish and emotional distress that she claims were suffered from the denial of her full benefits.

## DISCUSSION

### Standard of Review and Statutory Framework

In reviewing the denial of Social Security disability benefits, a court must review the entire administrative record to determine whether the ALJ's findings are supported by substantial evidence on the record as a whole. *Johnson v. Astrue*, 628 F.3d 991, 992 (8th Cir. 2011). "[T]he threshold for such evidentiary sufficiency is not high. Substantial evidence . . . is more than a mere scintilla." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

A reviewing court "must consider evidence that both supports and detracts from the ALJ's decision. If, after review, [the court finds] it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the decision of the Commissioner." *Chaney v. Colvin*, 812 F.3d 672, 676 (8th Cir. 2016) (citations omitted). Put another way, a court should "disturb the ALJ's decision only if it falls outside the available zone of choice." *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015) (citation omitted). A decision does not fall outside that zone simply because the reviewing court might have reached a different conclusion had it been the finder of fact in the first instance. *Id.*

To be entitled to benefits, a claimant must demonstrate an inability to engage in substantial gainful activity which exists in the national economy, by reason of a medically determinable impairment which has lasted or can be expected to last for not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The Commissioner has promulgated regulations, found at 20 C.F.R. § 404.1520, establishing a five-step sequential evaluation process to determine disability. The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity. If not, the Commissioner decides whether the claimant has a "severe" impairment or combination of impairments. A severe impairment is one which significantly limits a person's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). A special technique is used to determine the severity of mental disorders. This technique calls for rating the claimant's degree of limitations in four areas of functioning: understanding, remembering, or

6

applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself.  20 C.F.R. § 404.1520a(c)(3).

If the impairment or combination of impairments is severe and meets the duration requirement, the Commissioner determines at step three whether the claimant's impairment meets or is medically equal to one of the deemed-disabling impairments listed in the Commissioner's regulations.  If not, the Commissioner asks at step four whether the claimant has the RFC to perform his past relevant work.  If the claimant cannot perform his past relevant work, the burden of proof shifts at step five to the Commissioner to demonstrate that the claimant retains the RFC to perform work that is available in the national economy and that is consistent with the claimant's vocational factors – age, education, and work experience.  *See, e.g.*, *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010).

At step five, the medical-vocational guidelines come into play.  These guidelines "are a set of charts listing certain vocational profiles that warrant a finding of disability or non-disability." *McCoy v. Astrue,* 648 F.3d 605, 613 (8th Cir.2011) (citing 20 C.F.R. Part 404, Subpt. P, App. 2). "If the ALJ's findings as to RFC, age, education, and work experience fit any of the combinations of those criteria contained in the Tables in Appendix 2 to Part 404, then the ALJ must reach the conclusion (either 'disabled' or 'not disabled') directed by the relevant Rule or line of the applicable Table."  *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012) (quoting *Reed v. Sullivan,* 988 F.2d 812, 816 (8th Cir.1993)).   When a claimant cannot perform the full range of work in a particular

7

category of work (medium, light, and sedentary) listed in the regulations, the ALJ must generally produce testimony by a VE (or other similar evidence) to meet the step-five burden. *See Baker v. Barnhart*, 457 F.3d 882, 894 (8th Cir. 2006). But even though the burden of production shifts to the Commissioner at this step, the burden of persuasion to prove disability remains on the claimant. *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016).

**Finding of No Disability Prior to January 7, 2023 Based on RFC and VE Testimony**

Although Plaintiff argues that the ALJ failed to follow proper protocol and ignored her traumatic brain injury diagnosis, it is clear from the record that the ALJ followed the above-noted sequential evaluation process, including the special technique for evaluating mental impairments, and recognized that both Plaintiff's traumatic brain injury and her cervical spine degenerative disc disease were severe impairments. However, the ALJ found that these impairments, alone and in combination, did not rise to the level of a listed impairment. Plaintiff has not demonstrated that this finding was erroneous.

Plaintiff "bears the burden at step three of showing that [her] impairments meet or equal an impairment described in the listings." *Cronin v. Saul*, 945 F.3d 1062, 1066–67 (8th Cir. 2019) (citation omitted). "To establish equivalency, a claimant must present medical findings equal in severity to all the criteria for the one, most similar, listed impairment." *Id.* "[M]erely being diagnosed with a condition named in a listing and meeting some of the criteria will not qualify a claimant for presumptive disability under the listing." *Lott v. Colvin*, 772 F.3d 546, 549 (8th Cir. 2014).

Here, the ALJ properly discussed the applicable listings—namely, listings 1.15 and 1.16 for Plaintiff's spinal impairment, and listing 11.18 for Plaintiff's traumatic brain injury—at step three, and explained why Plaintiff failed satisfy the criteria required to qualify her for presumptive disability under these listings. Tr. 20-21. Plaintiff has not identified any error in these findings or explained which criteria she satisfies or what evidence in the record supports such a contention.

Likewise, the ALJ properly evaluated Plaintiff's impairments in the context of determining her RFC at step four. A claimant's RFC is defined as "what [the claimant] can still do" despite her "physical or mental limitations." 20 C.F.R. § 404.1545(a). The ALJ must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of her limitations. *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000) (citing *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995)).

Here, the ALJ considered the consistency of the evidence including the objective medical imaging, examination findings, Plaintiff's treatment and its effectiveness, prior administrative medical findings, Plaintiff's activities of daily living, and Plaintiff's testimony, in assessing the RFC. Tr. 21-24. Upon consideration of the evidence, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not fully supported by the record. Tr. 22.

As the ALJ discussed, Plaintiff sustained a concussion after falling and hitting her head in February 2021. Tr. 23. She was diagnosed with post-concussive syndrome,

9

posttraumatic headaches, chronic migraines, and, later, emerging vestibular dysfunction. Tr. 23, 285, 606.  Plaintiff's cervical spine MRI results showed a straightening of the normal cervical lordosis, clinically related to muscle spasm, and multi-level cervical spine disc protrusion.  Tr. 23, 1146-47.  However, her brain MRI was unremarkable. Tr. 286.  In the months following her concussion, Plaintiff developed right-side weakness, right-side neck pain, confusion, and mental fogginess and was evaluated for a stroke, which was ruled out.  Tr. 23, 485, 515.  Plaintiff improved with physical or vestibular therapy, occipital nerve blocks, and medication.  Tr. 606, 610, 810, 911, 1161.

Plaintiff's treating provider for her post-concussive syndrome, Matthew Bayes, M.D., noted in June of 2021, that he was "confused by [Plaintiff's] inconsistent physical exam findings," and reported that notwithstanding her subjective complaints, Plaintiff was alert and oriented, in no apparent distress, and had excellent eye contact, thought content, and speech.  Tr. 602.  Dr. Bayes further noted that he was "confused that [Plaintiff] can work on her inventions right now but she cannot work as a classroom teacher."  *Id*.

In August 2021, Plaintiff stated that her headaches were "pretty much nonexistent."  Tr. 474).  She was treated on more than one occasion in a well-lit room without complaint or apparent distress.  Tr. 606, 614.  The record reflects normal gait and/or coordination throughout the relevant time period.  *See, e.g.*, Tr. 285, 326, 478, 606, 610, 668, 702, 915, 1155.

10

Due to her symptom improvement, Dr. Bayes discussed with Plaintiff on September 1, 2021 stopping therapy and released Plaintiff to go back to work as a substitute teacher, if she so chose.  Tr. 614.  Further, in October of 2022, during physical therapy through SSM Health, Plaintiff ambulated independently during functional testing and showed no impairment with straight and normal cadence, change in gait speed, stepping around objects, and stairs.  Tr. 1205-06.  The record thus does not support a finding of greater physical limitations than those the ALJ incorporated into the RFC.

As to Plaintiff's alleged mental impairments, she was repeatedly found to be alert and oriented with intact comprehension, and normal memory, attention, and concentration throughout the relevant time period.  Tr. 285, 602, 606, 627, 914.  The record simply does not support impaired concentration or attention beyond the ALJ's limitations to simple and routine tasks with no hourly production quotas.

The ALJ also considered prior administrative medical findings but incorporated into the RFC even greater limitations than those found by state agency medical consultants, based on the ALJ's independent and thorough examination of the record.  Tr. 23-24.  At the initial level of review, the state agency medical consultants found that Plaintiff could perform medium exertional work with occasional climbing of ramps, stairs, ladders, ropes, or scaffolds.  Tr. 70-71.  On reconsideration, the consultants determined that Plaintiff could perform light exertional work and occasionally climb ramps, stairs, ladders, ropes, or scaffolds; and must avoid even moderate exposure to

vibration and hazards.  Tr. 81-82.  State agency psychological consultants at the initial and reconsideration levels of review found that Plaintiff could understand and remember simple to complex tasks; concentrate, persist, or maintain pace with simple tasks; adapt; and interact in most social situations.  Tr. 69, 84.  But upon review of the medical records, observations of treating physicians, and Plaintiff's own descriptions of her limitations, the ALJ concluded that Plaintiff's impairments required greater limitations.  Thus, the ALJ restricted Plaintiff to only sedentary work with several additional restrictions as reflected in the RFC, to account for Plaintiff's physical and mental symptoms.  Tr. 22.

In asserting that the ALJ erred, Plaintiff focuses heavily on a statement made by her treating provider, Dr. Bayes, on August 9, 2021 that Plaintiff was "really not making any progress" (Tr. 610).  However, the ALJ took note of this statement in evaluating Plaintiff's RFC.  Tr. 23.  Further, the same note from Dr. Bayes goes on to state that Plaintiff was not on any medication except Tylenol or Advil; that despite preferring to be seen in a room with the lights off, Plaintiff was alert and oriented in no apparent distress; that Plaintiff had a normal gait; that her near point convergence test was normal; and that while she had some mild pain in her neck, back pain, and subjective reports of decreased sensation, there was no weakness and no significant pain over the greater or lesser occipital nerve.  Dr. Bayes's assessment on this date was therefore post-concussion syndrome, but he reported an "inconsistent exam" and only "possible vestibular

12

dysfunction" with a note that he would like to discuss the case with Plaintiff's physical therapist. Tr. 610.

Further, a note from Dr. Bayes only one month later, on September 1, 2021 (when Plaintiff was still 48 years old), reported that Plaintiff's symptom score had dropped from 102 to 83, that Plaintiff was seen in a well-lit room without complaint and did not describe any lower extremity, arm, or low back pain when Dr. Bayes palpated her cervical spine, and that although Plaintiff quit her job as a teacher, she was "very active outside of work," including working on her inventions and doing podcasts. Tr. 614. In short, Dr. Bayes's treatment notes as a whole, and read in the context of the entire record, support the ALJ's finding that Plaintiff's impairments were not so severe as to render her disabled prior to her 50th birthday.

In addition to Dr. Bayes's statement, Plaintiff focuses on her symptoms related to her alleged "photophobia" or light sensitivity; Plaintiff argues that these symptoms should have given rise to a more restrictive RFC. *See* ECF No. 20 at 3. The ALJ took note of Plaintiff's subjective reports of light sensitivity and found that while Plaintiff's medically determinable impairments could reasonably be expected to cause this and other alleged symptoms, Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not fully supported by the record. Tr. 22.

This finding by the ALJ is supported by substantial evidence in the record. For example, the portions of the record Plaintiff cites as support of her symptoms related to light sensitivity are merely notes documenting Plaintiff's own subjective reports of such

13

sensitivity and Plaintiff's decision to wear dark glasses to her appointments.  *See* ECF No. 20 at 3; *see also* Tr. 524, 261-62.  But as noted above, Plaintiff was also reported to be seen in a well-lit room without complaint (Tr. 614), and the imaging of her orbital contents and optic nerves was normal.  Tr. 264.  Likewise, Plaintiff's treating doctor, Seth Hepner, M.D., indicated the following in his April 28, 2021 neurology evaluation of Plaintiff: "Interestingly, my MA reports that [Plaintiff] came back from the waiting room just fine, but upon entering the exam room immediately started complaining that the lights were too bright, and that voices were too loud, and she reports it was 'as if a switch had been flipped.'"  Tr. 284.  In his impression, Dr. Hepner indicated that Plaintiff had post-concussive syndrome with posttraumatic headache and "[c]hronic migraine without aura without status migrainosus, not intractable," but he did not indicate any medical diagnosis related to Plaintiff's alleged light sensitivity.  Tr. 285-86.  Nor has Plaintiff identified any other such diagnosis in the record.  Plaintiff simply has not demonstrated that the record supports further restrictions in the RFC based on her subjective reports of light sensitivity.

Finally, Plaintiff argues that one of her physical or vestibular therapy providers, Athletico, "determined that she was not well enough to continue" and that she was "terminated from the program because she was not well enough to participate" (ECF No. 17 at 2-3).  In support of these assertions, she cites pages 810 through 834 of the transcript.  ECF No. 17 at 3.  These pages of the transcript demonstrate that, early on in her therapy, Plaintiff needed frequent breaks (Tr. 833, 831) and that, on one occasion, she

had to rest in isolation due to an instance of increased noise that day at the clinic but that she thereafter returned and was able to complete the full program (Tr. 811). The same records also indicate that, over the course of her therapy, Plaintiff repeatedly demonstrated improved exercise tolerance and reduced symptoms, and was expected to only further improve with continued vestibular rehabilitation (Tr. 827, 825, 819, 817, 814). However, Plaintiff thereafter cancelled her therapy appointments, was reported to have "non-compliance with recommended session attendance," and self-discharged with a note from Athletico that its "attempts to contact [Plaintiff] were unsuccessful." Tr. 808-09. Therefore, Plaintiff's assertion that Athletico terminated Plaintiff from its physical therapy program due to Plaintiff's symptoms or impairments is simply not supported by the record.

In short, after carefully reviewing the totality of the evidence, the ALJ formulated an RFC that accommodated all of Plaintiff's functional limitations, as supported by the record, and Plaintiff has not shown that the record supports any greater degree of limitation.

Nor has Plaintiff identified any error in the ALJ's reliance on the VE's testimony. "A vocational expert's testimony based on a properly phrased hypothetical question constitutes substantial evidence" supporting the ALJ's decision. *Galloway v. Kijakazi*, 46 F.4th 686, 689 (8th Cir. 2022) (citation omitted). And "the ALJ's hypothetical question to the vocational expert needs to include only those impairments that the ALJ finds are substantially supported by the record as a whole." *Lacroix v. Barnhart*, 465

15

F.3d 881, 889 (8th Cir. 2006). The ALJ's hypothetical question in this case included all of the limitations that the ALJ found consistent with the record and also set forth in Plaintiff's RFC. As noted above, the ALJ's RFC is supported by substantial evidence, and the hypothetical question to the VE was therefore proper.

**Development of the Record and New Statements from Family Members and Others**

Although not entirely clear, Plaintiff appears to assert that the ALJ should have sought information from nonmedical sources such as her family members and a personal care assistant whose November 2024 statements Plaintiff now submits to this Court. An ALJ has a duty to develop the record fully and fairly, but "[u]ltimately, the claimant bears the burden of proving disability and providing medical evidence as to the existence and severity of an impairment." *Kamann v. Colvin*, 721 F.3d 945, 950 (8th Cir. 2013). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008) (citation omitted). The inquiry focuses on "whether [the plaintiff] was prejudiced or treated unfairly by how the ALJ did or did not develop the record; absent unfairness or prejudice, [courts] will not remand." *Onstad v. Shalala*, 999 F.2d 1232, 1234 (8th Cir. 1993).

Plaintiff has not shown that any additional evidence provided by her family members or other sources here would have altered the ALJ's assessment. The letters Plaintiff now provides merely restate her subjective complaints. Plaintiff has not shown the letters are non-cumulative or that there is any reasonable likelihood the letters would

16

have changed the Commissioner's determination so as to warrant remand to the ALJ. *See, e.g.*, *Whitman v. Colvin*, 762 F.3d 701, 708 (8th Cir. 2014) (describing standard for remand to consider additional evidence not presented to the ALJ or Appeals Council).

**Request for Compensatory Damages**

In addition to an award of benefits for the period prior to her 50th birthday, Plaintiff requests damages for mental anguish she alleges to have suffered from the wrongful denial of benefits. As noted above, Plaintiff has not demonstrated any error in the ALJ's decision. Further, the Court's role on judicial review is merely to affirm, modify, or reverse the Commissioner's decision, with or without remanding the cause for rehearing. See 42 U.S.C. § 405(g). The Court has no authority to award money damages. *Schweiker v. Chilicky*, 487 U.S. 412, 424 (1988) ("The [Social Security] Act, however, makes no provision for remedies in money damages against officials responsible for unconstitutional conduct that leads to the wrongful denial of benefits.").

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**. A separate Judgment shall accompany this Memorandum and Order.

*[signature]*
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated on this 11th day of March, 2025.